UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEW HAMPSHIRE

JESSICA FOUNTAIN, PLAINTIFF, PLAINTIFF

V.

FIRST DATA MERCHANT SERVICES, DEFENDANT

**COMPLAINT**

**PARTIES**

1. The Plaintiff, Jessica Fountain (hereinafter referred to as "Jessica Fountain" or the "Plaintiff"), is a natural person with a principal address of 67 Shannon Road, Rockingham County, New Hampshire.

2. The Defendant, First Data Merchant Services, (hereinafter referred to as "First Data" or the "Defendant"),  is a business, upon information and belief, with a principal address of 7301 Pacific Street, Omaha, Nebraska, and a mailing address of Mail Stop A19, Omaha, Nebraska 68114.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

## JURISDICTION

3. Plaintiff brings this action pursuant to The Civil Rights Act of 1964, 42 USC §§ 2000e et. seq.

4. ADA 42 U.S.C. § 12101 et seq., incorporates by reference Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5, which grants jurisdiction to this Court.

5. Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1342, and 1345.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (2) and 28 U.S.C. 1132(e) (2). The acts and omissions complained of herein occurred in substantial part in this District and Defendants may be found in this district.

## PROCEDURAL HISTORY

7. Plaintiff filed a charge of employment discrimination on the basis of disability with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the alleged employment discrimination on the basis of disability against her.

8. However, the EEOC dismissed the claim as untimely, and issued a "right to sue" letter to Plaintiff on or about December 19, 2013. This letter was received by Plaintiff's Representative on December 23, 2013.

9. Plaintiff files this complaint within 90 days of receiving the "right to sue" letter from the EEOC.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **2** of **15**

## **FACTS**

10   The Plaintiff was subjected to discrimination, and was ultimately terminated, by her former employer, First Data Merchant Services Corporation, LLC (hereafter First Data), because of her association with an individual with a disability (her minor son), in violation of the Americans With Disabilities Act (ADA), 42 USC §12112(b)(4)(2006 & Supp. II 2008).

11   The Plaintiff was also subjected to discrimination by First Data because her employer regarded her as an individual either having an impairment, or having a perceived impairment (which was not transitory), and ultimately terminated her employment because of her actual or perceived impairment;   42 U.S.C. {12102 (1) (C).

12.  On April 3, 1998, the Plaintiff was hired by First Data's predecessor, EFS Card Services, Inc. [1] as an Account Executive. The Plaintiff never had an "office" at First Data, and always worked "remotely" with a company laptop and cell phone. The Plaintiff had no "set" hours, and her performance was based upon sales quotas.

13.  Between 1998 and 2002, the Plaintiff met or exceeded her sale quotas, and in 2002 she became a Senior Account Executive.

---

[1] EFS merged with Concord National Bank (a/ka Star), later became Star Business Solutions, and then Concord EFS, prior to becoming First Data.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

14. Between 2002 and 2004, the Defendant assigned New Hampshire accounts to the Plaintiff; in 2004/2005, after the company became First Data, the Defendant also assigned the Plaintiff Massachusetts accounts in addition to her New Hampshire accounts.

15. Between 1998 an 2009, the Plaintiff was a consistent performer who not only met, but exceeded, her sales quotas, and for most of those years, the Plaintiff earned her annual bonuses for exceeding 110% of her sales goal. For four of those years, she achieved the "President's Club" award for ranking in the top 50 for sales. During that time, the Plaintiff never had "discipline" issues.

16. In September of 2009, the Plaintiff suffered a psychological breakdown. First Data suggested that the Plaintiff apply for intermittent leave under the Family Medical Leave Act (FMLA); the Plaintiff did apply, and was granted intermittent FMLA leave between September 2009 and March 2010.

17. Despite being on FMLA leave for three (3) months at the end of the year, the Plaintiff's 2009 reviews show average and superior performance in the general and advanced products areas, respectively. The Plaintiff's 2009 performance reviews, both general and for advanced products and equipment penetration, are attached as **Exhibits A1 and A2.**

18. After the first six (6) month intermittent leave, which ended in March of 2010, the Plaintiff was not psychologically ready to return to her full duties, and upon her treating doctor's advice, she

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **4** of **15**

requested, and received, a second intermittent FMLA leave from March 2010 to September 2010[2].

19. During this time, even though the Plaintiff was on intermittent FMLA leave, the Defendant did not reduce her sales quotas. Despite being on leave, the Plaintiff was able to not only reach, but also exceed, her sales goals and received her annual bonus. In fact, at the end of 2010, the Plaintiff was #6 in sales for the entire company, and was named to the "Platinum Club".

20. In early April of 2011, the Plaintiff's 12 year old son (hereafter referred to as "K") was admitted twice to a local in-patient psychological program. The Plaintiff again requested FMLA intermittent leave, and First Data approved it. The Plaintiff was required to attend numerous court appearances, psychological treatment appointments, and there was police involvement, parole officer meetings, and general family upheaval during this time.

21. Again, the Defendant did not adjust the Plaintiff's ales quotas during this time. Again, despite this fact, at the end of 2011 the Plaintiff was able to exceed her sales quotas and earn her annual bonus. The Plaintiff's FMLA leave ended on October 2, 2011 and she returned to work.

22. During the entire time she was on intermittent leave during 2009, 2010, and 2011, the Plaintiff's Regional Sales Director, Tierney Sarcia was her supervisor. In November of 2011, Jared Kirkpatrick (hereafter Jared or Kirkpatrick) became the Defendant's Regional Sales Director, and therefore the Plaintiff's direct supervisor.

23. Where her prior supervisor, Tierney Sarcia, had been very supportive of the Plaintiff during her previous period s of FMLA leave, enabling her to achieve-and exceed-her sales quotas,

---

[2] In June of 2010, the Plaintiff also had gastric bypass surgery, for which she took only 2 ½ weeks for recovery, as opposed to the standard 4 week recovery.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **5** of **15**

Kirkpatrick was not; in fact, from the moment he became aware that the Plaintiff had issues with her son that required adjustments to her schedule for team sales calls, training, etc., he seemed to sabotage her every move.

24. From the time Kirkpatrick became her supervisor, the Plaintiff provided detailed updates to him, as soon as humanly possible under the circumstances, so that he would be aware of her status and availability for trainings, telephone calls, meetings, and team calls. (See email February 20, 2012, attached as **Exhibit B**)

25. There were times when, due to unexpected circumstances, the Plaintiff could not notify Kirkpatrick in advance of her inability to participate in a scheduled meeting and/or call, or submit a report/calendar in a timely fashion, but the Plaintiff did everything in my power to minimize those instances.

26. As indicated in the attached email, on March 2, 2012, the Plaintiff did apply for, and received approval for, Intermittent Leave under FMLA. (See signed "Employee Responsibilities While on Leave of Absence", attached as **Exhibit C**).

27. As another example, during 2012, Kirkpatrick withheld sales reports from the Plaintiff; this report is called a "PCI Compliance Report". (Hereafter PCI Report) The Plaintiff first requested the PCI Report in January 2012. After no response from Jared, she requested the report again in February, and in March 2012, Jared provided the Plaintiff with what he represented to be a PCI Report; in fact, about 90% of the customer information was missing. This Report was critical to the Plaintiff's sales development, as it contained detailed information about prior customers that she had brought to First Data. The Plaintiff made additional requests to Jared for the full PCI Report, but never received it.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **6** of **15**

28. In early 2012, Kirkpatrick refused to assist the Plaintiff with closing a multi-million dollar 3-location international deal. As a result, the Plaintiff was unable to close the deal.

29. In February 2012, after repeatedly requesting his permission to run a contest between agent banks to boost sales, Kirkpatrick advised the Plaintiff that she would need to pay for the contest prizes out of her own pocket-this was highly unusual and unprecedented at First Data.

30. In April of 2012, Kirkpatrick embarrassed the Plaintiff during a team conference call by announcing that she was not "needed" at a Boston training session, which all of the other team members were expected to attend.  Then, with 24 hours notice, Kirkpatrick advised her that she was expected to attend the same training session in Connecticut. He was extremely upset when the Plaintiff explained that she was unable to attend the training.

31. After she returned from her FMLA leave in August 2012, Kirkpatrick advised the Plaintiff that she had received a verbal warning in May of 2012. He claimed that an email he sent to her on May 16, 2012 was a "verbal warning".   (See email from Mary 16, 2012 attached as **Exhibit D**).  The Plaintiff never received a verbal warning in May of 2012.

32.  Although she was on Intermittent FMLA Leave[3] between February 2012 and August 2012, because of her son's psychological issues the Plaintiff was able to meet her sales goals up until the end of June 2012. Even when she was hospitalized in April 2012 for an intestinal blockage, the Plaintiff was reluctant to notify Kirkpatrick that she had been admitted to the hospital, because she feared his reaction, and that she would be

---

[3] On April 29, 2012, while I was on intermittent leave, I suffered from an intestinal blockage, which required inpatient hospital treatment.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **7** of **15**

punished as a result. The Plaintiff acknowledges that she fell below my sales goals in July, August, and September of 2012.

33. On October 3, 2012, Jared emailed the Plaintiff, indicating that he wanted to schedule weekly "one on one" meetings. (**Exhibit E**)On October 10, 2012, Kirkpatrick generated a 90 day 'Individual Action Plan" (hereafter IAP), because the Plaintiff did not reach her sales quotas for the previous three (3) months-July, August, and September 2012. A copy of the IAP is attached as **Exhibit F** . The Plaintiff was on FMLA Leave for first two (2) out of the three (3) months covered by the IAP. In the IAP, Kirkpatrick actually *increased* her sales goals from $2.4 million per month, to $2.7 million per month.

**34.** By mid-October, Jared had excluded the Plaintiff from First Data's Sales and Commissions reporting, (**Exhibits G1 and G2)**

35. In November of 2012, the Plaintiff sought Jared's assistance with 3 of her merchant accounts, which was standard protocol. She sent him multiple emails, and called him many times on his cell phone, but he would not assist her with the accounts, and instead berated and verbally abused her for seeking his assistance.

36. During December of 2012, the Plaintiff was approved for vacation time from December 17 through December 26. While she was on vacation, the Plaintiff's mother-in-law died, and she was approved for personal leave up until Friday, January 4, 2013. The Plaintiff returned to work, as scheduled, on Monday January 7, 2013. By 7:34 that morning, Kirkpatrick had sent the Plaintiff an email, pointing out that I had not submitted any "deals" for the month of January. (See email chain attached as Exhibit **H**). He followed up with another email at 5:50 pm (**Exhibit H**). Since the Plaintiff hadn't

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **8** of **15**

worked since prior to Christmas, it was almost impossible for her to have had any deals in the "pipeline" for January. The Plaintiff did supply Kirkpatrick with the report he requested.

37. On January 9, 2013, Kirkpatrick called and screamed at the Plaintiff for at least fifteen (15) minutes about numbers and sales. He threatened her livelihood, her employment with First Data, and ended by demanding a daily report with minute-to-minute activity. He stated that if the Plaintiff did not provide these daily reports by 5:30 pm, he would call her continuously until he reached her. The Plaintiff was so upset after this conversation, that there was no way for her to function and compile a report. She subsequently put herself in an "out of office" status for the 9th, 10th and 11th.

38. At 9:15 pm, Kirkpatrick called the Plaintiff twice at her home. The next morning, he called at 8am. A few minutes later, he called her again, using his wife's cell phone. The Plaintiff did not answer his calls because she was frightened and emotionally exhausted by his irrational activities and tirades On January 10th, Kirkpatrick called the Plaintiff's home twice without leaving a message-once from his cell phone, and once from his wife's cell phone.

39. On the 11th, Kirkpatrick, Igor Sterenko (Kirkpatrick's boss), and First Data's Human Resources Representative, Gayla Baker, tried to reach the Plaintiff by telephone. The Plaintiff spoke with Ms. Baker on the 11th. She explained Jared's phone call to her on the 9th, and how upset and frightened she was. The Plaintiff also called in sick for the 14th and 15th, because she was still emotionally upset.

40. On the 14th, Ms. Baker emailed the Plaintiff, inviting her to a telephone conference that same day. The Plaintiff did not feel comfortable participating in the telephone conference, because Jared had intimidated her. On January 15th, Ms. Baker advised the Plaintiff in an email that she was in

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH 03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **9** of **15**

"termination" status, but that she would put the termination "on hold" pending an investigation. Ms. Baker demanded that the Plaintiff contact her by the end of business on January 17th.

41. The Plaintiff requested more time to schedule the meeting because she had surgery scheduled for January 16th. The Plaintiff requested FMLA paperwork from Ms. Baker, and submitted the completed paperwork on January 22, 2013, but I received no response. (**Exhibit I**)

42. Plaintiff sought legal counsel, and once she informed Ms. Baker that she had an attorney, Ms. Baker cancelled the telephone conference, stating that the attorneys would need to speak with each other.

43. Plaintiff's attorney and First Data's attorney did correspond with each other in an effort to resolve the situation, but ultimately, on January 30, 2013, First Data's attorney notified Plaintiff's attorney that First Data would terminate the Plaintiff's employment, effective February 11, 2013, allegedly due to her poor sales performance and failure to comply with the October 2012 IAP. The Defendant never provided a termination letter to the Plaintiff.

44. First Data allowed the Plaintiff to be on Intermittent FMLA Leave from September 2009 to September 2010, and from April 2011 to October 2011, and to work remotely. During that time, First Data never adjusted the Plaintiff's sales goals; however, it wasn't an issue because during the first two (2) FMLA leaves she was able to meet her sales goals despite being on FMLA leave.

45. When the Plaintiff took a third Intermittent FMLA Leave in February of 2012, with Kirkpatrick as her supervisor, the Defendant did not adjust her sales goals.

46. During the Plaintiff's February through August 2012 leave, Kirkpatrick refused to provide the Plaintiff support with customer issues, setting up customer contests, revenue generating opportunities, and he excluded her from sales reports and training.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **10** of **15**

47. When I could not meet my sales quotas in July, August, and September of 2012, Jared claimed that I had received a "verbal warning" in May about my sales performance.

48. In October 2012, Jared implemented an IAP for the Plaintiff. His hostility towards her and his refusal to provide support of any kind to enable her to generate sales escalated to the point where ultimately First Data terminated her on February 11, 2013.

49. Prior to her 2012 FMLA Leave, the Plaintiff was consistently able to meet her sales goals. The Defendant terminated the Plaintiff three (3) months short of her 15th anniversary with the company. The Plaintiff was completely shocked that her career with First Data was over. After First Data terminated her, the Plaintiff continued to be extremely emotionally upset, and she was hospitalized for a bleeding ulcer in mid-February 2013.

**COUNT I**

**DISCRIMINATION BECAUSE OF ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY**

50. The Plaintiff repeats and reavers the allegations in Paragraphs 1 through 49 of this Complaint.

51. The Defendant, by and through its employees, subjected the Plaintiff to discrimination because of her association with an individual with a disability (her minor son), in violation of 42 U.S.C. {12112(b)(4), (2006 & Supp. II 2008).

52. The Defendant, by and through its employees, ultimately terminated the Plaintiff's employment because of her association with an individual with a disability (her minor son).

53. The Defendant's discrimination against the Plaintiff violated the Americans With Disabilities Act (ADA) 42 USC {12112(b) (4) (2006 & Supp II 2008) .

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **11** of **15**

54. The Defendant's termination of the Plaintiff's employment violated the Americans with Disabilities Act (ADA) 42 USC {12112(b) (4) (2006 & Supp II 2008) .

55. As a result of the Defendant's discriminatory acts and omissions, the Plaintiff suffered monetary and non-monetary losses.

> **WHEREFORE THE PLAINTIFF DEMANDS JUDGMENT AGAINST THE DEFENDANT for the following:**
>
> A. Salary and benefits, and accrued interest thereon, for all periods-past, present, and future, during which the Plaintiff has suffered or will suffer lost wages and/or lost earning capacity;
>
> B. Compensatory damages for Plaintiff's mental anguish, pain and suffering, and other nonpecuniary losses;
>
> C. Punitive damages in an amount to be determined at trial;
>
> D. Plaintiff's attorneys' fees and costs of this action; and
>
> E. For whatever other relief is meet and just.

## COUNT II

### DISCRIMINATION BECAUSE EMPLOYER REGARDED EMPLOYEE AS HAVING AN IMPAIRMENT

56. The Plaintiff repeats and reavers the allegations in Paragraphs 1 through 55 of this Complaint.

57. The Defendant, by and through its employees, subjected the Plaintiff to discrimination because the Defendant regarded her as an individual having an impairment, due to the Plaintiff's previous FMLA leave for her own health reasons. The Defendant's discrimination violated 42 U.S. C. 12102 (1)(C) (2006 & Supp II 2008) .

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **12** of **15**

58. The Defendant ultimately terminated the Plaintiff in violation of 42 U.S.C. 12102 (1)(C) (2006 & Supp II 2008).

59. As a result of the Defendant's discriminatory acts and omissions, the Plaintiff suffered monetary and non-monetary losses.

**WHEREFORE THE PLAINTIFF DEMANDS JUDGMENT AGAINST THE DEFENDANT for the following:**

A. Salary and benefits, and accrued interest thereon, for all periods-past, present, and future, during which the Plaintiff has suffered or will suffer lost wages and/or lost earning capacity;

B. Compensatory damages for Plaintiff's mental anguish, pain and suffering, and other nonpecuniary losses;

C. Punitive damages in an amount to be determined at trial;

D. Plaintiff's attorneys' fees and costs of this action; and

E. For whatever other relief is meet and just.

**COUNT III**

**DISCRIMINATION BECAUSE EMPLOYER REGARDED THE EMPLOYEE AS HAVING A PERCEIVED IMPAIRMENT WHICH WAS NOT TRANSITORY**

60. The Plaintiff repeats and reavers the allegations in Paragraphs 1 through 59 of this Complaint.

61. The Defendant, by and through its employees, subjected the Plaintiff to discrimination because the Defendant regarded her as an individual having a perceived impairment which was not transitory (i.e. which was not expected to last less than six (6) months.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **13** of **15**

62. The Defendant's discrimination violated 42 U.S. C. 12102 (1)(C) (2006 & Supp II 2008) .

63. The Defendant ultimately terminated the Plaintiff in violation of 42 U.S.C. 12102 (1)(C) (2006 & Supp II 2008).

64. As a result of the Defendant's discriminatory acts and omissions, the Plaintiff suffered monetary and non-monetary losses.

WHEREFORE THE PLAINTIFF DEMANDS JUDGMENT AGAINST THE DEFENDANT for the following:

F. Salary and benefits, and accrued interest thereon, for all periods-past, present, and future, during which the Plaintiff has suffered or will suffer lost wages and/or lost earning capacity;

G. Compensatory damages for Plaintiff's mental anguish, pain and suffering, and other nonpecuniary losses;

H. Punitive damages in an amount to be determined at trial;

I. Plaintiff's attorneys' fees and costs of this action; and

J. For whatever other relief is meet and just.


**DEMAND FOR JURY TRIAL**

The Plaintiff demands a jury trial on all Counts of the foregoing Complaint.


Date: March 23, 2014                                              /s/ *Jessica Fountain*
                                                                                JESSICA FOUNTAIN



STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*Tel (603) 898-4383 / Fax(603) 898-5210*
*www.salemlegalservices.com*

Page **14** of **15**

Date:  March 23, 2014

Then personally appeared before me the above-named JESSICA FOUNTAIN, who verified the foregoing to be true and accurate to the best of her knowledge.

/s/ Darlene M. Daniele
DARLENE M. DANIELE
Notary Public
My commission expires:
3/20/18

Salem Legal Services, LLC
45 Stiles Road, Suite 212, Salem, NH  03079
Tel (603) 898-4383 / Fax(603) 898-5210
www.salemlegalservices.com

Page **15** of **15**