**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Jessica Fountain

    v.                              Civil No. 14-cv-121-LM
                                                 Opinion No. 2014 DNH 246

First Data Merchant Services


## O R D E R

Jessica Fountain has sued her former employer, First Data Merchant Services ("First Data") in three counts, under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (Counts I and III), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (Count II).  Before the court is First Data's motion to: (1) strike six paragraphs of Fountain's amended complaint; and (2) dismiss the complaint in its entirety, with prejudice.  Fountain objects.  For the reasons that follow, First Data's request to strike material from Fountain's amended complaint is denied, while its motion to dismiss is granted in part and denied in part.


### I. Background

Unless otherwise noted, the facts in this section are drawn from Fountain's amended complaint.

Fountain was hired by First Data's predecessor in 1998 as an account executive.  At all times relevant to this matter, she

worked remotely, with a company laptop and phone.  In 2002, she became a senior account executive.  Up until 2009, she often met or exceeded her sales quotas, and never had any disciplinary issues.

In September of 2009, Fountain suffered a psychological breakdown.  For the next year, she was on intermittent leave under the FMLA, granted in two six-month segments.  In April of 2011, she was granted a third intermittent FMLA leave, which she had requested on account of her son's admissions to an in-patient psychological program.  That leave ended in October of 2011, and she returned to work.  In March of 2012, Fountain requested, and was granted, a fourth intermittent FMLA leave.

In November of 2011, First Data's Jared Kirkpatrick became Fountain's supervisor.  Their working relationship was contentious.  Fountain alleges that Kirkpatrick was not as supportive as his predecessor had been, and identifies friction over, among other things, assistance (or a lack thereof) from Kirkpatrick, communication, and scheduling.  In October of 2012, Kirkpatrick sought to schedule weekly meetings with Fountain, one on one, and placed her on a 90-day "individual action plan [IAP]."  The basis for the IAP, according to Kirkpatrick, was Fountain's failure to meet her sales goals.  In early January of 2013, Kirkpatrick berated Fountain for failing to have any deals in the pipeline, and demanded that she provide him with daily,

minute-by-minute reports of her work activities. In response to the stress she experienced as a result of Kirkpatrick's demand, Fountain placed herself on "out of office" status for January 9, 10, and 11. Additional phone calls from Kirkpatrick ensued.

On January 11, Kirkpatrick, his supervisor, and First Data's Human Resources representative, Gayla Baker, tried to reach Fountain by phone. Fountain spoke with Baker on January 11, and called in sick for January 14 and 15, because she was still emotionally upset. On the 14th, Baker invited Fountain to participate in a telephone conference. Fountain declined. The next day, Baker sent Fountain an e-mail, advising her "that she was in 'termination' status, but that she [Baker] would put the termination 'on hold' pending an investigation [and demanding] that [Fountain] contact her by the end of business on January 17th." Fountain responded by requesting: (1) more time to schedule the meeting, due to surgery scheduled for January 16; and (2) FMLA paperwork. Fountain submitted that paperwork on January 22, but never received a response. Then, after Fountain informed Baker that she had retained legal counsel, Baker cancelled the telephone conference, telling Fountain that her attorney and First Data's attorney would need to speak with one another. The attorneys did confer, but failed to reach a resolution. At some point in late January or early February of 2013, First Data decided to terminate Fountain's employment.

On December 9, 2013, Fountain filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  In her EEOC charge, she alleged:

> [O]n January 30, 2013, First Data's attorney notified
> [her] attorney that First Data would terminate [her]
> employment, effective February 11, 2013, allegedly due
> to [her] poor sales performance and failure to comply
> with the October 2012 IAP.  I never received a
> termination letter from First Data.

Def.'s Mot. to Dismiss, Ex. 1 to Scott Decl. (doc. no. 7-3), at 7.  The EEOC dismissed Fountain's charge as untimely, on grounds that she had filed it more than 300 days after January 30, 2013, which the EEOC took to be the day on which on which First Data terminated her employment.  See id., Ex. 3 to Scott Decl. (doc. no. 7-5), at 1.  Thereafter, the EEOC denied Fountain's request to reopen her charge, rejecting her argument that she was actually discharged on February 11, 2013, rather than January 30.  See Def.'s Motion to Dismiss and Strike, Ex. 5 to Scott Decl. (doc. no. 17-7).

In her original complaint, Fountain's allegations regarding the communications concerning her termination are virtually identical to those in her EEOC charge.  See Compl. (doc. no. 1) ¶ 43.  Fountain's amended complaint includes a slightly revised paragraph 43, along with five additional paragraphs that do not appear in her original complaint:

> Plaintiff's attorney and First Data's attorney did
> correspond with each other in an effort to resolve the

situation; however, on January 30, 2013, First Data's
attorney . . . communicated to Plaintiff's attorney
that she would <u>recommend</u> that First Data terminate the
Plaintiff's employment, effective February 11, 2013,
allegedly due to her poor sales performance and
failure to comply with the October 2012 IAP.

Counsel continued to correspond to seek a resolution.

On February 7, 2013, First Data's counsel sent an
email to Plaintiff's counsel stating the following:
". . . I have notified Human Resources that I do not
see any reason for the continued hold on Ms.
Fountain's employment termination."  That email also
stated that she would <u>recommend</u> that the effective
date of termination be February 11, 2013.

Moreover, the February 7, 2013 email concluded with
". . . Human Resources will follow up with a letter
regarding her employment termination and the effective
date".  The Defendant never provided a termination
letter to the plaintiff.

First Data's Human Resources Department, and not their
counsel, had the ability to terminate the Plaintiff's
employment.

It wasn't until February 11, 2013 that it became
apparent that First Data not only intended to follow
their attorney's recommendation, but in fact had
effectively terminated Ms. Fountain.  Atty. Olson's
February 11, 2013 email to Plaintiff's counsel
requested, on behalf of Human Resources, the return of
all company property.  This is the only communication
confirming the Plaintiff's termination by First Data.

Am. Compl. (doc. no. 15) ¶¶ 45-50 (emphasis added, citations to
the record omitted).

    After First Data moved to dismiss Fountain's original
complaint, she objected, and the court construed her objection
to be a motion to amend.  <u>See</u> Order (doc. no. 14) 1.  In her
pleading, Fountain asked the court to "[a]llow [her] to Amend

her Complaint to include allegations involving the violation of
her rights under the Family Medical Leave Act."  Pl.'s Obj.
(doc. no. 10) 1.  In the memorandum of law in support of her
pleading, Fountain devoted considerable attention to the issue
of when she was terminated and when the clock began to run on
the limitation period for filing a charge with the EEOC.  The
court granted the motion to amend without qualification.

## II. Discussion

First Data moves for two forms of relief.  First it asks
the court to strike paragraphs 45 through 50 of Fountain's
amended complaint.  Second, it moves to dismiss the amended
complaint.  The court considers each request for relief in turn.

### A. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure
("Federal Rules") provides that "[t]he court may strike from a
pleading an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter."  However, Rule 12(f)
"motions are narrow in scope, disfavored in practice, and not
calculated readily to invoke the court's discretion."  Manning
v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013)
(quoting Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir.
1985)).  "This is so because 'striking a portion of a pleading
is a drastic remedy and . . . it is often sought by the movant
simply as a dilatory or harassing tactic.'"  Manning, 725 F.3d

at 59 (quoting 5C Charles Alan Wright, et al., Federal Practice & Procedure § 1380 (3d ed. 2011)).

With respect to the Rule 12(f) standard, First Data has not identified anything redundant, immaterial, impertinent, or scandalous in paragraphs 45 through 50 of Fountain's amended complaint, and the court can identify nothing that meets that standard.  First Data argues that paragraphs 45 through 50 should be stricken because it is impermissible for a plaintiff to plead facts in an amended complaint that contradict those in the original complaint.  The problem with this argument is that the facts in the amended complaint do not contradict those in the original complaint.  Rather, the additional facts clarify and supplement the one-sentence allegation contained in paragraph 43 of Fountain's original complaint dealing with the communications between counsel concerning First Data's intent to discharge Fountain.

The original complaint asserts that First Data's attorney told Fountain's "attorney that First Data would terminate [Fountain's] employment, effective February 11, 2013 . . . ." Compl. (doc. no. 1) ¶ 43.  Before filing her amended complaint, Fountain had explained, in her objection to First Data's first motion to dismiss, that she had looked more closely at the actual e-mail communications between counsel and discovered that her original allegation required clarification and

supplementation. <u>See</u> Doc. no. 10-1, at 2-3. It is not surprising, then, that her amended complaint would contain these additional facts.

The differences between the allegations in paragraph 43 of Fountain's original complaint and the allegations in her amended complaint fall short of the kind of blatant contradictions that would prompt a court to disregard the allegations in the amended complaint when ruling on a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Di Simone v. CN Plumbing, Inc.,</u> No. 13-CV-5088, 2014 WL 1281728, at *3 (E.D.N.Y. Mar. 31, 2014); <u>see also</u> <u>Brooks v. 1st Precinct Police Dep't</u>, No. 11-CV-6070 (MKB), 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014). Nor does the court discern on the part of Fountain "an attempt to manipulate the pleadings in order to avoid an argument for dismissal." <u>Di Simone</u>, 2014 WL 1281728, at *3 (citations omitted). Thus, the "court[] appl[ies] the general rule recognizing that an amended pleading completely replaces the original pleading." <u>Brooks</u>, 2014 WL 1875037, at *2. However, even if the court were to find that the allegations in the amended complaint were directly contradictory to those in the original complaint, the court would nonetheless apply "the more usual and benevolent option [of] accept[ing] the superseded pleadings [while] allow[ing] the factfinder to consider the earlier pleadings as admissions in due course." <u>Russell v. Hollister Corp.,</u> No. 13-cv-5273

(PAC)(JLC), 2014 WL 2723236, at *4 (S.D.N.Y. June 17, 2014)

(quoting Barris v. Hamilton, No. 96 CIV. 9541(DAB), 1999 WL

311813, at *2 (S.D.N.Y. May 17, 1999)).

First Data also argues that the scope of Fountain's

amendment goes beyond the relief the court granted in document

no. 14.  It does not.  For that reason, and for the reasons

described above, the court declines to strike paragraphs 45

through 50 from Fountain's amended complaint.

### B.  Motion to Dismiss

Fountain's amended complaint includes three counts.  In

Count I, Fountain claims that First Data violated the ADA by

discriminating against her, and discharging her, because of her

association with an individual with a disability, her son.  In

Count II, Fountain claims that First Data violated the FMLA by

interfering with her attempt to exercise her FMLA rights and by

discriminating against her and discharging her because she

exercised those rights.  In Count III, Fountain claims that

First Data violated the ADA by discriminating against her, and

discharging her, because it regarded her as having an

impairment.  First Data moves to dismiss Counts I and III on

grounds that the claims asserted therein have not been

administratively exhausted, and moves to dismiss Count II for

failure to state a claim on which relief can be granted, see
Fed. R. Civ. P. 12(b)(6).

### 1. Counts I and III

As noted, First Data argues that Fountain's ADA claims are
barred because she has not exhausted her administrative
remedies.  The court agrees.

"Claims of employment discrimination and retaliation under
the ADA are subject to the procedural requirements of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 to -9."
Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 389 (1st
Cir. 2014) (citing 42 U.S.C. §§ 12117(a) & 12203(c); Loubriel v.
Fondo del Seguro del Estado, 694 F.3d 139, 142 (1st Cir. 2012)).
Thus, "a would-be plaintiff must . . . exhaust his
administrative remedies." Rivera-Díaz, 748 F.3d at 389.  That
"task embodies 'two key components: the timely filing of a
charge with the EEOC and the receipt of a right-to-sue letter
from the agency.'" Id. at 389-90 (quoting Jorge v. Rumsfeld,
404 F.3d 556, 564 (1st Cir. 2005)).  As the court of appeals has
further explained:

> The first component contemplates the filing of an
> administrative charge within either 180 or 300 days of
> the offending conduct, depending on the particular
> jurisdiction in which the charged conduct occurs.  See
> Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275,
> 278 & n.4 (1st Cir. 1999).  . . .  The longer period
> is available only in so-called "deferral"
> jurisdictions, in which "a State or local agency [has]
> authority to grant or seek relief from" the allegedly

> illegal practice. 42 U.S.C. § 2000e-5(e)(1); see
> Mohasco [Corp. v. Silver], 447 U.S. [807,] 815–14
> [(1980)].

Rivera-Díaz, 748 F.3d at 390 (parallel citations omitted).  New
Hampshire is a deferral jurisdiction, see Miller v. N.H. Dep't
of Corr., 296 F.3d 18, 21 n.1 (1st Cir. 2001), which gave
Fountain 300 days from the date of the offending conduct to file
her charge with the EEOC.

As for when the 300-day limitation period began to run,
"[i]t is by now well established that, in employment
discrimination actions, limitations periods normally start to
run when the employer's decision is made and communicated to the
affected employee." Morris v. Gov't Dev. Bank of P.R., 27 F.3d
746, 750 (1st Cir. 1994) (citing Del. State Coll. v. Ricks, 449
U.S. 250, 261 (1980); Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610
(1st Cir. 1994)).  That is, "[t]he date the employee received
the final notice of termination triggers the date from which the
timeliness of the claim is measured, and not the date [on] which
the decision takes affect." Baron v. Port Auth., 968 F. Supp.
924, 927 (S.D.N.Y. 1997) (citations omitted).

First Data argues that the 300-day period for filing an
EEOC charge began to run on January 30, 2013, or, in the
alternative, no later than February 7, either of which would
make Fountain's filing untimely.  Fountain contends that the
limitation period began to run on February 11, which she

characterizes as the date on which First Data confirmed its
decision to discharge her.  She also contends that even if her
charge was untimely, she is entitled to the benefit of equitable
tolling.  Neither of Fountain's arguments is persuasive.

In its decision to dismiss Fountain's charge of
discrimination, the EEOC determined that the January 30
communication between the parties' attorneys started the running
of the limitation period.  The parties disagree about the import
of that communication, but the court need not wade into that
dispute because the February 7 e-mail from First Data's counsel
to Fountain's counsel, which preceded Fountain's EEOC charge by
303 days, unquestionably triggered the running of the 300-day
limitation period.  That e-mail concludes this way:

> Although Ms. Fountain will no longer be employed by
> First Data, I will check with HR to see if the
> effective termination date can be made for this coming
> Monday rather than retroactive to early January when
> it would have become effective but-for the "hold."
> This way, any impact on benefits would occur
> prospectively after Feb. 11th.  Human Resources will
> follow up with a letter regarding her employment
> termination and the effective date.

Am. Compl., Ex. J (doc. no. 15-12), at 4 (emphasis added).
Because that e-mail communicated to Fountain that First Data had
decided to discharge her, see Morris, 27 F.3d at 750, it is
beyond dispute that the limitation period began to run no later
than February 7, which rendered her EEOC charge untimely.

Fountain attempts to evade the effect of the February 7 e-mail by making the following argument:

> [B]ecause First Data notified Ms. Fountain of its
> intent to terminate her, and this adverse action was
> taken while her [January 22] FMLA leave request was
> pending, and because Frist Data never denied the leave
> request, the date of [the last] adverse employment
> action should be measured from February 11, 2013, the
> date on which First Data's counsel confirmed that she
> was indeed terminated.

Pl.'s Mem. of Law (doc. no. 19-1) 7.  There are at least three problems with that argument.  First, Fountain provides no legal support for the proposition that the pendency of a request for FMLA leave renders an employer's communication of an adverse employment action ineffective for the purpose of starting the limitation period for filing an EEOC charge.  Second, as the court has already explained, First Data's counsel confirmed Fountain's discharge no later than February 7 by telling Fountain's counsel that Fountain "will no longer be employed by First Data," Am. Compl., Ex. J (doc. no. 15-12), at 4.  And third, given that Fountain's request for FMLA leave was still pending on February 11, it is difficult to see what makes February 11 a more appropriate date than February 7 for commencing the limitation period.  In sum, Fountain's argument is not persuasive.  As a result, the court concludes that her amended complaint fails to allege that she filed a timely EEOC

charge but, rather, alleges facts that show that her charge was untimely.

Fountain next argues that, if her EEOC charge was untimely, that untimeliness should be excused under the doctrine of equitable tolling.  The court does not agree.

"Title VII time limits are not jurisdictional and may be subject to equitable tolling."  Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 93-96 (1990)).  Equitable tolling is a narrow doctrine, see Farris, 660 F.3d at 563 (citations omitted), that may be applied to extend a statute of limitations "[o]nly in 'exceptional circumstances,'" id. (quoting Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005)).  Moreover, "the heavy burden to prove entitlement to equitable relief lies with the complainant."  Farris, 660 F.3d at 563 (citing Rivera-Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990)).

As for the circumstances in which equitable tolling may be appropriate, the Farris court explained:

> In Baldwin County Welcome Center v. Brown, the Supreme Court set out four circumstances in which equitable tolling may grant a Title VII (and, by extension, an ADA) plaintiff relief: (1) the plaintiff "received inadequate notice" of the statute of limitations; (2) "a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon;" (3) "the court [has] led the plaintiff to believe that she

14

has done everything required of her," or (4)
"affirmative misconduct on the part of a defendant
lulled the plaintiff into inaction."  466 U.S. 147,
151 (1984); Rys v. U.S. Postal Serv., 886 F.2d 443,
446 (1st Cir. 1989).

660 F.3d at 563 (parallel citations omitted).  Finally, "[i]t is

axiomatic that 'equitable tolling does not extend to what is at

best a garden variety claim of excusable neglect.'"  Id. at 565

(quoting Irwin, 498 U.S. at 96).

Here, Fountain invokes the fourth Baldwin County factor,

affirmative misconduct by First Data that lulled her into

inaction.  This is her argument:

> First Data's failure to either approve, or properly
> deny, Ms. Fountain's FMLA leave request, coupled with
> the "on hold" termination status and the lack of a
> termination letter from First Data, led her (and her
> counsel) to believe that Ms. Olson's letter of
> February 11 2003 . . . conveyed the decision to
> terminate her.  The employer caused the confusion, and
> did not clarify the employee's work status by
> affirmatively communicating her termination directly
> to either Ms. Fountain or her counsel.

Pl.'s Mem. of Law (doc. no. 19-1) 8.  That argument is without

merit.  The February 7th e-mail unambiguously informed Fountain

that First Data had decided to discharge her.  And, as the court

has already explained, the status of her request for FMLA leave

had no bearing on the effectiveness of the February 7th e-mail

with respect to providing her with notice of her discharge that

was sufficient to start the running of the limitation period.

Fountain's failure to grasp the plain meaning of the February

7th e-mail amounts to nothing more than excusable neglect.  That removes this case from the realm of equitable tolling.

In sum, Fountain has not exhausted her administrative remedies because her amended complaint establishes that she filed her EEOC charge after the limitation period had expired, and she has failed to allege facts that demonstrate her entitlement to equitable tolling.  See Rivera-Díaz, 748 F.3d at 388.  Thus, First Data is entitled to dismissal of Counts I and III of Fountain's amended complaint.

### 2. Count II

In Count II, Fountain claims that First Data: (1) interfered with her attempt to exercise her FMLA rights in violation of 29 U.S.C. § 2615(a)(1); and (2) discriminated against her for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2).  First Data argues that Fountain has not alleged sufficient facts to state a claim under either of her two legal theories.

When ruling on a motion to dismiss for "failure to state a claim on which relief can be granted," Fed. R. Civ. P. 12(b)(6), the court is to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The purpose of the court's inquiry is to determine "whether the complaint contains

16

sufficient factual matter to state a claim to relief that is plausible on its face." Carrero-Ojeda v. Autoridad de Energía Eléc., 755 F.3d 711, 717 (1st Cir. 2014) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)) (internal quotation marks and brackets omitted).  When conducting its inquiry, a court must: (1) "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," id. (quoting Schatz v. Rep. State L'ship Comm., 669 F.3d 50, 55 (1st Cir. 2012)); and (2) "take the facts of the complaint as true, 'drawing all reasonable inferences in [plaintiff's] favor, and see if they plausibly narrate a claim for relief,'" id. (quoting Schatz, 669 F.3d at 55).

Under the heading "Interference with Rights," the FMLA identifies two separate prohibited acts:

**(1) Exercise of Rights**

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

**(2) Discrimination**

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful under this subchapter.

29 U.S.C. § 2615(a).

17

To make out a prima facie case of FMLA interference, under § 2615(a)(1), an employee must show that:

> (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. E.g., Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012) (reh'g and reh'g en banc denied); Goelzer v. Sheboygan Cty., Wis., 604 F.3d 987, 993 (7th Cir. 2010).

Carrero-Ojeda, 755 F.3d at 722 n.8.

To make out a prima facie case of FMLA retaliation, under § 2615(a)(2), an employee must show that:

> (1) she availed herself of a protected FMLA right; (2) she was "adversely affected by an employment decision;" and (3) "there was a causal connection between [her] protected conduct and the adverse employment action." See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 107 (1st Cir. 2006).

Id. at 719.

### a. FMLA Interference

Fountain asserts that "[b]y failing to properly process, approve and/or deny [her] January 22, 2013 [request for] FMLA leave, the Defendant, by and through its employees, interfered with, restrained, and/or improperly denied [her] attempt to exercise her rights under the FMLA." Am. Compl. (doc. no. 15) ¶ 64. Nowhere does Fountain allege that First Data denied her FMLA benefits to which she was entitled. Rather, she alleges that First Data neither approved nor denied her request for FMLA

leave.  Thus, she has failed to state a claim under 29 U.S.C. § 2615(a)(1).  See Carrero-Ojeda, 755 F.3d at 722 n.8.

In her objection to First Data's motion to dismiss, Fountain argues that "[i]n the First Circuit, an employer's 'interference' with an employee's exercise of his/her rights under [the] FMLA is defined as taking retaliatory action [against] an employee for exercising those rights, or using the exercise of those rights as a 'negative' factor in evaluating the employee."  Pl.'s Mem. of Law (doc. no. 19-1) 9.  The case on which Fountain relies for that proposition, Mellen v. Trustees of Boston University, 504 F.3d 21 (1st Cir. 2007), actually says something different.

In that case, the plaintiff opted to dismiss, with prejudice, a retaliation claim under 29 U.S.C. § 2615(a)(2), and then attempted to assert an interference claim, under § 2615(a)(1), based upon allegations that her employer used her FMLA leave as a negative factor in deciding to discharge her. See Mellen, 504 F.3d at 26-27.  The court of appeals rejected that argument, reasoning that the plaintiff's claim was that her employer retaliated against her for taking FMLA leave and, therefore, fell under § 2615(a)(2) rather than § 2615(a)(1). See id. at 27.  So too here.  As characterized in Fountain's memorandum of law, her purported § 2615(a)(1) claim, i.e., that she was discharged in retaliation for using or requesting FMLA

19

leave, is actually a claim under § 2615(a)(2).  Accordingly, the interference claim under § 2615(a)(1) in Count II is dismissed.[1]

### b.  FMLA Retaliation

Fountain frames her claim under § 2615(a)(2) in the following way:

> [t]he Defendant employer subjected the Plaintiff to discrimination because the Plaintiff exercised her rights under [the] FMLA[], ultimately terminating her without having approved or denied her January 22, 2013 request for FMLA leave . . . .  The Defendant's exercise of her rights under acts and/or omissions [sic] constituted discrimination, in violation of 29 U.S.C. 2615(a)(2).

Am. Compl. (doc. no. 15) ¶ 65.  Construed in the light most favorable to Fountain, and in light of the allegations in her failed attempt to state a § 2615(a)(1) claim, Fountain's § 2615(a)(2) claim is that First Data discharged her in retaliation for both taking FMLA leave, and for requesting another such leave in January of 2013.

---

[1] First Data also argues that Fountain's § 2615(a)(1) claim fails as a matter of law because her complaint identifies no harm that resulted from its alleged failure to properly process her January 22 request.  That argument appears to be meritorious.  See Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 423 (1st Cir. 2014) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90-91 (2002); McArdle v. Town of Dracut/Dracut Pub. Schs., 732 F.3d 29, 32 (1st Cir. 2013); Dube v. J.P. Morgan Investor Servs., 201 F. App'x 786, 788 (1st Cir. 2006) (per curiam)).  But, the court need not reach this argument because dismissal is warranted for the reasons recounted above.

The court's broad construction of Fountain's complaint, however, can extend only so far.  Specifically, in her objection to First Data's motion to dismiss, Fountain appears to expand her claim to include, as additional adverse employment actions, Kirkpatrick's conduct toward her after she returned from her 2012 FMLA leave.  While the factual narrative of Fountain's amended complaint includes allegations concerning Kirkpatrick's conduct, Count II gives absolutely no indication that it is based in any way on that conduct.  The only employee actions Fountain mentions in Count II are First Data's failure to properly handle her January 2013 request for FMLA leave and its decision to discharge her.  Any claim based upon Kirkpatrick's conduct would have to be added by amendment, not through an argument in an objection to a motion to dismiss.  See L.R. 7.1(a)(1).  But, because the court has already construed one objection to a motion to dismiss as a motion to amend, and Fountain does not seek such relief in her current objection, the court declines to construe Fountain's current objection as a motion to amend.  So, Kirkpatrick's conduct, while perhaps relevant for some purposes, is not an independent basis for liability under § 2615(a)(2).

Having construed Fountain's claim, the court turns to First Data's argument for dismissal.  First Data argues that: (1) Fountain does not allege that she was discharged because she

requested FMLA leave; and (2) because Fountain did not submit
her January 2013 FMLA paperwork until after she had been placed
in termination status, she cannot establish the causation
element of her claim.  While Fountain's amended complaint is not
as clear is it might be, the court has construed it to include a
claim that she was discharged for requesting and using FMLA
leave on several occasions between 2009 and 2012, and for
requesting another such leave in 2013.  Thus, the court is not
persuaded by First Data's first argument.  Moreover, given the
court's determination that Fountain is claiming that she was
discharged both for her past use of FMLA leave and her request
for another FMLA leave, the court cannot conclude, as a matter
of law, that Fountain's § 2615(a)(2) claim fails just because
she was placed in termination status before she made her January
2013 request for FMLA leave.  The question of whether Fountain
can establish the third element of her claim should be resolved
on a properly developed summary judgment record, rather than at
this early stage in the proceedings.

### III. Conclusion

    For the reasons detailed above, First Data's motion to
strike and dismiss, document no. 17, is granted in part and
denied in part.  Specifically, First Data's motion to strike is

denied.  Its motion to dismiss is granted, with prejudice, as to

Counts I and III, but is denied as to Count II.

     SO ORDERED.

                          _____

                          Landya McCafferty
                          United States District Judge

December 2, 2014

cc:   Darlene M. Daniele, Esq.
       K. Joshua Scott, Esq.